1    **WO**

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Jonathon Alan Farnham, Sr. and David            No. CV-11-01520-PHX-DGC
     Lewis,
10                                                    **ORDER**
                        Plaintiffs,
11
     v.
12
     Jan Brewer, Governor of Arizona; Will
13   Humble, Department of Health Services;
     John Cooper, Former CEO of State
14   Hospital; Anne Froio, Current CEO of State
     Hospital; Vicki Davis, Current Director of
15   ACPTC; Stephen Forster, Chief of Security
     at ACPTC; Michelle Burlin, Therapist;
16   Daren Tutek, Therapist; Steven Gray, Civil
     Commitment Evaluator; and Thomas C.
17   Horne, Asst. Attorney Gen. for
     Defendant(s); et al.,
18
                        Defendants.
19

20          Plaintiffs Jonathon Alan Farnham, Sr. and David Lewis are residents of the

21   Arizona State Hospital and have been committed to the Arizona Community Protection

22   and Treatment Center ("ACPTC"), a facility for the housing and treatment of sexually

23   violent persons.  On August 8, 2011, Plaintiffs filed a complaint pro se, alleging that a

24   number of restrictions placed on them by Defendants in the ACPTC violate their

25   constitutional rights under the First, Fourth, Eight, and Fourteenth Amendments.  Doc. 1.

26   Plaintiffs make twelve claims (*Id.* at 4-15) and request relief of $5,000 in compensatory

27   and punitive damages and an injunction that Defendants cease enacting and enforcing

28   punitive policies in violation of less restrictive alternative laws.  *Id.* at 16.

The Court has dismissed Plaintiffs' claims against Defendants Steven Grey, Civil Commitment Evaluator, (claim eight) and Thomas C. Horne, Attorney General, (claim eleven) pursuant to previously-filed motions to dismiss.  Doc. 28; *see* Docs. 20 & 24. Defendants Jan Brewer, Governor of Arizona; Will Humble, Department of Health Services; John Cooper, Former CEO of State Hospital; Anne Froio, Current CEO of State Hospital; Vicki Davis, Current Director of ACPTC; Stephen Forster, Chief of Security at ACPTC; Michelle Burlin, Therapist; and Daren Tutek, Therapist, have filed a motion to dismiss the remaining claims for lack of jurisdiction and failure to state a claim upon which relief can be granted.  Doc. 34.  The motion has been fully briefed (Docs. 35, 38) and no party has requested oral argument.  For the reasons stated below, the Court will grant Defendants' motion and dismiss Plaintiffs' complaint without prejudice.[1]

**I.     Legal Standard.**

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted).  Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted).  To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting

---

[1]Plaintiffs have also filed "Plaintiff's Request to the Court, that Defendant's Provide Copies of Their Case Law Citations" (Doc. 36) and "Plaintiff's Response and Rebuttal to Defendants Brewer, Humble, Cooper, Froio, Davis Forster, Burlin, and Tutek's Reply in Support of Their Motion to Dismiss" (Doc. 38) which the Court construes as an attempt to file a sur-reply.  Neither the request for copies of case law citations nor the unauthorized sur-reply are permitted under the Federal Rules of Civil Procedure or the Court's Local Rules.  The Court will deny Plaintiffs' request and will not consider Plaintiffs' sur-reply arguments.

*Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

"In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not look* beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. . . . The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (internal citations omitted; emphasis in original).  As the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir.2010).  A complaint filed by a *pro se* litigant must be held to less stringent standards than formal pleadings drafted by lawyers.  *Id.* (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ( *per curiam* )).

**II.    Discussion.**

Defendants argue that Plaintiffs have failed to allege sufficient facts to state a cognizable claim under 42 U.S.C. § 1983.  Doc. 34 at 2, 3-4.  In addition, they argue that Defendants are protected by qualified immunity, that the Eleventh Amendment bars claims against them in their official capacities as well as the injunctive relief sought, and that any claims for monetary damages are time-barred under Arizona's notice of claim statute, A.R.S. § 12-821.01(A).  *Id.* at 2.

**A.    Plaintiffs's § 1983 Claims.**

Plaintiffs assert that they have not filed suit under § 1983, but under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  Doc. 35 at 1, 2, 9.  Section 1983 pertains to actions that deprive an individual of "some right, privilege or immunity protected by the Constitution of the United States" that are taken "under color of state law."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005); 42 U.S.C. § 1983.  An action brought under *Bivens*, is the equivalent of a § 1983 action, but against federal officials.  *Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009) (stating that a *Bivens*

action "is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.") (internal quotation marks and citation omitted).  Plaintiffs' complaint pertains only to state officials or those performing official duties within the state hospital.  The Court will therefore construe Plaintiffs' claims as § 1983 claims.

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage.  *Thornton*, 425 F.3d at 1163-64 (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n,* 42 F.3d 1278, 1284 (9th Cir.1994).  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)).  It is well settled that section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.  *Johnson v. Barker*, 799 F.2d 1396, 1399 (9th Cir. 1986); *Baker*, 443 U.S. at 146.  Mere negligence is not sufficient to support a § 1983 claim.  *Daniels v. Williams*, 474 U.S. 327, 330-331 (1986).

Suits under § 1983 may be brought against state officials in their personal or official capacities.  "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis in original).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal,* 556 U.S. at 1948.  An official-capacity suit, by contrast, requires that the entity itself be a "moving force" behind the deprivation – the entity's "policy or custom" must have played a part in the violation of federal law.  *Graham*, 473 U.S. at 166.  A suit against a public official in his official capacity makes the public entity liable to the extent it has received notice and an opportunity to respond.  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

Plaintiffs have identified each Defendant in the caption of the complaint by his or her name and official position.  Plaintiffs repeat the relevant names and official

designations throughout the body of the complaint.  This suggests that Plaintiffs seek to bring claims against Defendants in both their personal and official capacities.  Plaintiffs filed a motion requesting that the Court modify their complaint to sue Defendants "in their individual capacity, and the relief they seek, to comply with the court's and Judge Wake's guidance and instructions."  Doc. 32 at 1.  This is an apparent reference to the fact that Judge Wake dismissed Plaintiffs' claims against individuals in a related suit titled "Resident Farnham's Complaint Against Arizona State Hospital Mr. Cooper and ACPT Security Chief" because no individuals were named as parties in the caption of the complaint and the complaint lacked any factual details related to specific individuals.  *See* Case No. 2:11-CV-00192-PHX-NVW, Doc. 6.   Plaintiffs have not failed to name individuals in the caption of the complaint in this case, and the Court therefore will deny Plaintiffs' motion as moot, treat the complaint as an attempt to assert claims against Defendants in both their personal and official capacities, and evaluate whether Plaintiffs have alleged sufficient facts to state a claim.

> **1.     Claim One.**

Plaintiffs allege that Defendants Cooper, Froio, Davis, and non-party Lee Guyco violated their First Amendment rights by not permitting them to exchange letters with "surrogate sons and other close friends because they are in prison."  Doc. 1 at 4.  They also allege that they must get phone numbers cleared before making personal calls, some of their calls to a business or organization have been denied, and mail does not go out or get delivered daily.  *Id.*  Plaintiffs also allege that Defendant Cooper and other staff have referred to them as "inmates," which violates the double-jeopardy clause because it shows that the ACPTC treatment program is punitive in nature.  *Id.*

Defendants argue that Plaintiffs fail to allege sufficient facts to state a First Amendment claim against any Defendant.  Doc. 34 at 5-6.  The Court agrees.  The only action tied to a specific defendant is Plaintiffs' allegation that Defendant Cooper refers to residents as "inmates."   As Defendants argue, however, this is not a violation of Plaintiffs' first amendment rights because it involves the speech of others, not that of

Plaintiffs. It also does not show that the ACPTC treatment program is punitive and that Plaintiffs' confinement therefore constitutes double jeopardy. The Supreme Court has stated that "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno,* 481 U.S. 739, 746 (1987). Neither does it follow that because a person is called an inmate for purposes of civil confinement that the confinement is punitive. Even if the term "inmate" is consistent with the term used in penal institutions, Plaintiffs have alleged no specific punitive actions on the part of Defendant Froio or others who allegedly refer to them this way. Without more, the Court cannot plausibly infer that Plaintiffs have suffered punitive treatment and are entitled to relief.

The restriction on Plaintiffs' ability to communicate with friends and family in prison may constitute a First Amendment or due process violation, but Plaintiffs have failed to allege facts connecting any Defendant to the creation or implementation of this alleged restriction or to describe specific incidents from which the Court could plausibly infer an intentional constitutional violation or implementation of an unconstitutional policy. It is not clear from the facts presented that the restriction Plaintiffs allege is even the result of a particular ACPTC policy and not that of the prisons where Plaintiffs seek to send correspondence.

Similarly, Plaintiffs have failed to allege sufficient facts for the Court to infer that the alleged phone call restrictions constitute First Amendment or other constitutional violations. Plaintiffs have alleged no actions on the part of any Defendant, and have cited no specific incidents or policies from which the Court can infer that Plaintiffs' phone access was denied improperly rather than for legitimate, non-punitive purposes. *See Kansas v. Hendricks,* 521 U.S. 346, 363 (1997) ("The State may take measures to restrict the freedom of the dangerously mentally ill. This is a legitimate nonpunitive governmental objective and has been historically so regarded"); *Jones v. Blanas*, 393 F.3d 918, 933-34 (9th Cir. 2004) (stating that under Ninth Circuit precedent, "a restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation

to [its non-punitive] purpose.'") (internal citation omitted).   Absent facts showing the circumstances under which specific phone calls were denied, Plaintiffs have raised no more than the mere possibility of misconduct – they have not plausibly shown that they are entitled to relief. *See* Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678.

Finally, the allegation that mail does not go out or get delivered to residents on a daily basis is not a sufficient ground for a constitutional claim.   Plaintiffs have not alleged that mail service is denied them or that mail is being withheld, and a temporary delay in mail service does not violate a detainee's First Amendment rights.   *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999).

## 2.      Claim Two.

Plaintiffs allege that Defendants Brewer, Cooper, Froio, Davis, and Forster have violated their Eight Amendment right to be free of cruel and unusual punishment because their building and grounds are surrounded by razor wire, they are unable to go outside without a staff member, and their movements within grounds are more regimented than those of prisoners in a prison setting. Doc. 1 at 5.  Plaintiffs also allege that mold in the showers, walls, and ceilings have caused Plaintiff Farnham to have "a persistent cough, trouble swallowing, chest paints to center of chest, and coughs up mucus/flem?"  *Id.*

Plaintiffs again fail to link any of the allegations with specific actions or inactions by any Defendant.  With regard to mold, Plaintiffs do not allege that any Defendant was made aware of these conditions and failed to take action.  Nor do they allege that Plaintiff Farnham sought or received a medical diagnosis for his alleged mold-related physical ailments.  Thus, even if Plaintiffs had linked their allegations to individual defendants, the connection between the mold and Plaintiff Farnham's alleged injury is speculative and therefore insufficient to show that he is entitled to relief. *See Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.").

Plaintiffs' allegations regarding ACPTC's security measures fail more fundamentally because the Supreme Court has held that placing restraints on sexually

violent persons is not unconstitutional.  *See Kansas v. Hendricks,* 521 U.S. at 363; *c.f. Revels v. Vincenz,* 382 F.3d 870, 874 (9th Cir. 2004) ("Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner"); *Allison v. Snyder,* 332 F. 3d 1076, 1079 (7th Cir. 2003) ("detainees [under the Illinois Sexually Violent Person's Act] may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not be punished.").  The Court cannot plausibly infer that the use of razor wire and staff attendants is improper in light of the ACPTC's legitimate safety and security concerns.

### 3.    Claim Three.

Plaintiffs allege that Defendants violated their Fourth Amendment rights because they seized Plaintiffs' television and gaming systems and destroyed other personal property without due process of law.  Doc. 1 at 7.  Plaintiffs once again provide no connection between these allegations and the actions of any Defendant.  Indeed, Plaintiffs provide no detail about what happened to deprive them of their possessions.  Plaintiffs allege generally that "state officials . . . told him directly that he was burnt and they did not want to discuss the issue with him."  *Id.*  They also allege that they complained in writing to Defendant Froio and received no response or attempt to address the issue.  *Id.*  Absent any details showing who took or destroyed their property and under what circumstances, Plaintiffs fail to provide a basis from which the Court can plausibly infer either that Plaintiffs' property loss or Defendant Froio's lack of response constitute a constitutional violation.

### 4.    Claim Four.

Plaintiffs allege that Defendants have violated their Fourteenth, Eighth, and Fourth Amendment rights because they have failed to adhere to Arizona's Less Restrictive Alternative ("LRA") Laws.  Doc. 1 at 8.  Specifically, Plaintiffs allege that Defendants have placed "several restrictions" on Plaintiffs, including "restricting Community Activities" and "forcing them to live in buildings that are more restrictive than some

prisons." *Id.*  Plaintiffs also allege that only one man has been released from the program in the last three years, and the program was revamped "so [Plaintiffs] had to restart everything after [they] had already done a year of treatment." *Id.*

Defendants argue, and the Court agrees, that Plaintiffs' repeated allegations that the ACPTC is more restrictive than most prisons are conclusory and thus insufficient to state a claim.  Plaintiffs generally allege prison-like security measures – such as secured buildings and restrictions on activities – that courts have recognized as constitutionally legitimate restraints for the civil confinement of sexually violent persons.  In addition, Plaintiffs fail to identify the particular restraints that they claim violate Arizona's LRA laws.  Finally, violations of state law that do not amount to constitutional violations are insufficient to state a § 1983 claim.  *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996).

Plaintiffs' allegations of having to restart their treatment program are also lacking in any factual detail.  Like the previous claims, the allegations do not identify specific actions or inactions taken by any Defendant, and thus fail to state a claim.

### 5.    Claim Five.

Plaintiffs' fifth cause of action merely reasserts Plaintiffs' general allegations regarding their treatment as "inmates" and having to restart their treatment program. Doc. 1 at 6.  The Court has dealt with these allegations above.

Plaintiffs also allege that the therapists who run classes in the ACPTC are not properly licensed and do not hold degrees or licenses as Psychologists or Psychiatrists. *Id.*  Defendants argue that Arizona law requires a person running classes to be a "competent professional" approved by the superior court according to approved guidelines.  Doc. 34 at 9; see A.R.S. § 36-3701(2).  Even if true, this claim fails to allege a violation of the Constitution or federal law as required to state a valid claim under § 1983.  Plaintiffs have alleged no facts showing that the therapists employed by ACPTC have rendered improper treatment or otherwise violated Plaintiffs' federally-protected rights.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 6.  Claim Six.

Plaintiffs assert that Defendants have violated their First Amendment rights because they are not permitted to voice opinions contrary to those of Defendant therapists Burlin and Tutek in group settings.  Doc. 1 at 9.  Plaintiffs allege that if they disagree with the therapists they are labeled "anti-social," punished for voicing disagreement, and held back in therapy, causing them to be "incarcerated" longer.  *Id.*  They also allege that Defendants Burlin and Tutek show favoritism to some residents, and that Burlin, Tutek, and non-party therapists Eric Pearson and Dr. Mitchell lack proper licensing and accreditation.  *Id.*

Plaintiffs' claims that they are punished for voicing disagreement and that therapists show favoritism are completely unsupported by specific factual allegations. The allegation that therapists are not properly licensed or accredited fail for the reasons already stated above with regard to claim five.

### 7.  Claim Seven.

Plaintiffs assert that Defendants have violated their Eighth Amendment rights because they are not permitted food visits with family members, and visits are terminated if anyone during the visit needs to use the restroom.  Doc. 1 at 10.  Plaintiffs assert that these restrictions are more restrictive than those placed on prison inmates.  *Id.*

Again, Plaintiffs fail to allege facts concerning any specific incidents or to connect the allegations with specific Defendants.  Plaintiffs attempt to remedy these deficiencies in their response (Doc. 35 at 6), but the Court may only look to what is stated in the complaint.  *Schneider*, 151 F.3d at 1197 n. 1.

### 8.  Claim Nine.

Plaintiffs assert that Defendants have violated their Eighth Amendment rights because they hold Plaintiff Lewis's lifetime probation status against him.  Defendants argue, and the Court agrees, that this claim does not rise above the speculative level because it is completely devoid of any factual or legal basis.

1        9.      **Claim Ten.**

2              Plaintiffs assert that Defendants have violated their Eighth Amendment rights

3    because they knowingly hire Department of Correction ("DOC") staff who implement

4    DOC policies and rules, and that working conditions in the ACPTC result in a higher

5    turn-over of staff with therapeutic backgrounds.  Doc. 1 at 13.  Plaintiffs also allege that

6    they face daily threats to their safety and health due to hostile residents who "snap"

7    without warning and "talk about killing," and residents who have bad hygiene.  *Id.*

8              Plaintiffs allege no facts showing how those hired with DOC backgrounds have

9    acted in violation of their constitutional or federally-protected rights, and they have

10   alleged no incidents in which they were harmed by other residents' threats or bad hygiene

11   or in which Defendants observed or knew of potential harms but failed to take action.

12   More fundamentally, Plaintiffs have failed to connect any alleged violations with any

13   specific Defendant.

14       10.     **Claim Twelve.**

15             Plaintiffs assert that Defendants have violated their Eighth Amendment rights by

16   having and enforcing a non-smoking policy.  Doc. 1 at 15.  In response to Defendants'

17   motion, Plaintiffs drop this claim.  Doc. 35 at 7.

18       B.      **Qualified Immunity.**

19             In determining whether a state actor is entitled to qualified immunity, the Court

20   first asks whether the plaintiff has made a *prima facie* showing that the state actor

21   violated plaintiff's constitutional rights.  *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir.

22   2001); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the facts alleged show a

23   constitutional violation, the Court next determines whether the law was clearly

24   established.  *Saucier*, 533 U.S. at 201.  Finally, even if the law was clearly established,

25   the state actor is entitled to qualified immunity if he or she made a reasonable mistake

26   regarding what the law required.  *Id.* at 205.

27             Defendants argue that even if Plaintiffs had alleged enough facts to state a

28   constitutional claim, the law regarding conditions of confinement for SVPs is not "clearly

1   established" and that Defendants are therefore protected from personal liability.  Doc. 34

2   at 13-14.  Because the Court has dismissed Plaintiffs' complaint without prejudice and

3   Plaintiffs may yet allege sufficient facts and legal theories to state a constitutional claim,

4   it is premature for the Court to determine whether the law regarding specific

5   constitutional violations is "clearly established."  Plaintiffs are advised that if they seek to

6   sue Defendants in their personal capacity in an amended complaint, they must plead

7   sufficient facts to show constitutional violations and – to withstand a defense of qualified

8   immunity – the law upon which these violations are based must be clearly recognized.

9   This is so because government officials "generally are shielded from liability for civil

10   damages insofar as their conduct does not violate clearly established statutory or

11   constitutional rights of which a reasonable person would have known."  *Harlow v.*

12   *Fitzgerald*, 457 U.S. 800, 818 (1982).

13        **C.**   **Eleventh Amendment.**

14          **1.**   **Money Damages.**

15         The Eleventh Amendment does not permit Plaintiffs to sue the state of Arizona (or

16   its agencies, such as the state hospital) for money damages.  *See Alden v. Maine*, 527 U.S.

17   706 (1999); *Hans v. Louisiana*, 134 U.S. 1 (1890).  Plaintiffs' complaint is therefore

18   dismissed without leave to amend to the extent it seeks money damages from the state.

19          **2.**   **Injunctive Relief.**

20         Plaintiffs ask the Court to require Defendants to "cease enacting and enforcing

21   policies that are punitive and violate established LRA laws."  Doc. 1 at 16.  The Court

22   interprets this as a request for an injunction.  The Eleventh Amendment does not bar suits

23   for injunctions against state officials.  *See e.g. Ex Parte Young*, 209 U.S. 123, 158 (1908);

24   *Mayweathers v. Newland*, 314 F.3d 1062, 1069-70 (9th Cir. 2002).

25         The Eleventh Amendment does, however, bar federal courts from granting

26   injunctive relief against state officials based solely on violations of state law.  *See*

27   *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 122 (1984).  Plaintiffs'

28   complaint is therefore dismissed without leave to amend to the extent it seeks an

injunction based solely on violations of Arizona's LRA laws.  To the extent Plaintiffs wish to amend their complaint to seek an injunction for specific constitutional violations, Plaintiffs are advised that they must (1) allege sufficient facts to establish the specific violations against them, and (2) allege sufficient facts to show that future injury to Plaintiffs absent an injunction is likely to occur and is not merely a possibility.  *See, e.g., Olagues v. Russoniello*, 770 F.2d 791, 799 (9th Cir. 1985) ("the mere possibility of future injury is insufficient to enjoin official action.").

**D.      A.R.S. § 12-821.01.**

A.R.S. § 12-821.01(A) requires that claims for damages against a public entity or public employee be filed within 180 days of the time the action accrued.  A.R.S. § 12-821.01(A).  The statute defines accrual as "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage."  A.R.S. § 12-821.01(B).

Defendants argue that Plaintiffs' claims should be dismissed as untimely.  Doc. 34 at 16.  Plaintiffs argue that their claims were brought in a timely manner because the violations are on-going.  Doc. 35 at 9.  The Court has already dismissed Plaintiffs claims for money damages against the state with prejudice on Eleventh Amendment grounds.  To the extent Plaintiffs seek to bring claims against Defendants in their personal capacities, the Court is unable to discern from the complaint when the alleged violations accrued.  Plaintiffs are advised that if they seek to bring damages claims against individual defendants in their amended complaint, they must allege sufficient facts to state a claim against each defendant, including facts showing when the claimed violations occurred or when and under what circumstances Plaintiffs became aware of the actions giving rise to their alleged injuries.

**IT IS ORDERED:**

1.      Defendants Brewer, Humble, Cooper, Froio, Davis, Forster, Burlin, and Tutek's motion to dismiss (Doc. 34) is **granted**.

2.      Plaintiffs' complaint (Doc. 1) is **dismissed with leave to amend** as set forth in this order.

3.      Plaintiffs remaining motions (Docs. 32, 36) and attempt to file a sur-reply (Doc. 38) are **denied**.

4.      If Plaintiffs choose to file an amended complaint, they must do so on or before **July 27, 2012**.

Dated this 3rd day of July, 2012.

David G. Campbell
United States District Judge

- 14 -